IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SALVADOR SEGOVIA, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HARDIAL SINGH MANGAT, SURINDER MANGAT ) <br> and BADAR, INC., ) <br> ) <br> Defendants. ) | CIVIL ACTION <br><br> Case No. 4:25-CV-04001 |

## COMPLAINT

COMES NOW, SALVADOR SEGOVIA, JR, by and through the undersigned counsel, and files this, his Complaint against Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2. Plaintiff, SALVADOR SEGOVIA, JR. (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3. Plaintiff is disabled as defined by the ADA.

1

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5. Plaintiff uses a wheelchair for mobility purposes.

6. In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7. Defendant, HARDIAL SINGH MANGAT (hereinafter "HARDIAL SINGH MANGAT"), is an individual who transacts business in the State of Texas and within this judicial district.

8. Defendant, HARDIAL SINGH MANGAT, may be properly served with process for service, via its Owner, to wit:  16433 Smith Street, Jersey Village, TX 77040-2835.

9. Defendant, SURINDER MANGAT (hereinafter "SURINDER MANGAT"), is an individual who transacts business in the State of Texas and within this judicial district.

10. Defendant, SURINDER MANGAT, may be properly served with process for service, via its Owner, to wit:  16433 Smith Street, Jersey Village, TX 77040-2835.

11. Defendant, BADAR, INC. (hereinafter "BADAR, INC."), is a Texas company that transacts business in the State of Texas and within this judicial district.

12. Defendant, BADAR, INC., may be properly served with process for service via its Registered Agent, to wit: c/o Towfiq Gilani, Registered Agent, 12010 Bammel North Houston, Suite A, Houston, TX 77006.

## FACTUAL ALLEGATIONS

13. On or about February 16, 2025, Plaintiff was a customer at "Super Food Store" a business located at 12010 Bammel N Houston, Houston, TX 77006 referenced herein as "Super Food Store". Attached is a receipt documenting Plaintiff's purchase. *See* Exhibit 1. Also attached is a photograph documenting Plaintiff's visit to the Property. *See* Exhibit 2.

14. Plaintiff lives 9 miles from the Property.

15. Defendants, HARDIAL SINGH MANGAT and SURINDER MANGAT, are the owners or co-owners of the real property and improvements that Super Food Store is situated upon and that is the subject of this action, referenced herein as the "Property."

16. Defendant, BADAR, INC., is the lessee or sublessee of the real property and improvements that Super Food Store is situated upon and is the subject of this action

17. Plaintiff's access to the business(es) located at 12010 Bammel N Houston, Houston, TX 77006, Harris County Property Appraiser's identification number: 1164860000001 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., are compelled to remove the physical barriers to access and correct the ADA violations that exist at

the Property, including those set forth in this Complaint.

18. Defendants, HARDIAL SINGH MANGAT Ñ SURINDER MANGAT, as owners of the Property are responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is an agreement between Defendants, HARDIAL SINGH MANGAT AND SURINDER MANGAT and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendants' independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

19. Plaintiff has visited the Property once before as a customer and advocate for the disabled. Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and for Advocacy Purposes.

20. Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous continuing barriers to access, as such, Plaintiff is deterred from returning to the Property as a customer until the barriers to access identified in this Complaint are removed.

21. Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to

suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

22. Although Plaintiff did not personally encounter each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

23. Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an inquiry in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

24. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

25. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

26. Congress explicitly stated that the purpose of the ADA was to:

(i) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

\* \* \* \* \*

(iv) invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

27. The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

28. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

29. The Property is a public accommodation and service establishment.

30. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

31. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

32. The Property must be, but is not, in compliance with the ADA and ADAAG.

33. Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

34. Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his

access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

35. Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., have discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

36. Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

37. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

      i. Across the vehicular way from Unit Q, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the

        2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

  ii.  Across the vehicular way from Unit Q, the Property lacks an accessible route from the two accessible parking spaces to the accessible entrances of the Property, due to the lack of any nearby accessible ramp, in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

  iii.  Across the vehicular way from Unit Q, the accessible route leading from the accessible parking spaces to the entrances of the public accommodations, there is a vertical rise of 3 inches along the accessible route in violation of Section 303.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property as vertical rise in excess of ¼ inch may cause Plaintiff's wheelchair to snag on the vertical rise and tip over.

  iv.  Directly in front of Houston Dream Events, the accessible parking space does not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space.

  v.  Directly in front of Houston Dream Events, due to the lack of an access aisle, when a vehicle is parked in the accessible parking space and there are cars

parked on side of the accessible parking space and due to the raised curb on the other side, there lacks adequate space for Plaintiff to enter and exit their vehicle. As a result, the Property lacks an accessible route from this accessible parking space to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

vi. Directly in front of Houston Dream Events, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

vii. Directly in front of Houston Dream Events, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

viii. Directly in front of Houston Dream Events, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This barrier to access would expose Plaintiff to increased risk of injury for if the wheelchair should fall off the side edge of the ramp, the lack of edge protection would likely cause Plaintiff to tip and incur injury.

ix. Across the vehicular way from Unit F, the two accessible parking spaces and associated access aisle have a running slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

x. Across the vehicular way from Unit F, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xi. Across the vehicular way from Unit F, there are two accessible parking spaces that are not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

xii. In front of Unit G, the accessible parking space does not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close

|      | |
|------|---|
|      | presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space. |
| xiii. | In front of Unit G, due to the lack of an access aisle, when a vehicle is parked in the accessible parking space and there are cars parked on either side of the accessible parking space, there lacks adequate space for Plaintiff to enter and exit their vehicle. As a result, the Property lacks an accessible route from this accessible parking space to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property. |
| xiv. | In front of Unit G, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space. |
| xv.  | Nearest Unit G, due to a failure to enact a policy of proper grounds and foliage maintenance, there is a plant near the adjacent ramp that is not properly trimmed, and it encroaches into the accessible route. As a result, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the rest of the units of the Property as Plaintiff's wheelchair would not be able to get past this barrier. |

xvi. Nearest Unit G, due to a failure to enact a policy of proper grounds and foliage maintenance, there is a plant near the adjacent ramp that is not properly trimmed, and it encroaches into the accessible route. As a result, the Property lacks an accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property.

xvii. Across the vehicular way from Super Food Store, the two accessible parking spaces are not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. The access aisle is not aligned with or adjacent to the nearest accessible ramp, as a result, this barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property. Given the fact these accessible parking spaces are located very near to the street entrance of the Property, the chances of being struck are increased as vehicles arriving from the street are typically moving faster.

xviii. Across the vehicular way from Super Food Store, the two accessible parking spaces have a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it

|      | |
| ---- | --- |
|      | dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle. |
| xix. | Across the vehicular way from Super Food Store, the two accessible parking spaces have a cross slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increase the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff. |
| xx.  | Across the vehicular way from Super Food Store, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space. |
| xxi. | Across the vehicular way from Taqueria El Nene food truck, due to a policy of placing a permanently affixed platform in the access aisle, the access aisle is in violation of Section 502.4 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property. |
| xxii.| Across the vehicular way from Taqueria El Nene food truck, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space. |

xxiii. In front of Super Food Store, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xxiv. In front of Super Food Store, the Property has accessible ramps leading from the accessible parking spaces to the accessible entrances with slopes exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

xxv. Nearest Super Food Store, due to the presence of pavers as well as a failure to enact a policy of proper grounds maintenance, the ground surfaces of the accessible route have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

xxvi. Nearest Super Food Store, there are openings in the ground surfaces with widths exceeding an inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gaps and increase the potential for

                Plaintiff's wheelchair to tip over in violation of Section 302.3 of the 2010 ADAAG Standards.

    xxvii.    Inside Super Food Store, the interior has walking surfaces lacking a 36 (thirty-six) inch clear width, due to a policy of maximizing the number of items of sale in the store by placing items in the accessible route, in violation of Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to properly utilize public features at the Property because the width of Plaintiff's wheelchair would prevent passage through areas with a width less than 36 inches.

    xxviii.    As a result of the barrier to access identified in (xxvii), there lacks a continuous accessible route connecting the accessible elements within the Super Food Store, to the accessible entrance. This is a violation of Section 206.2.4 of the 2010 ADAAG Standards, and prevented Plaintiff from traversing throughout the store to identify items for purchase as would an able-bodied individual would.

    xxix.    Defendants fail to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

38.    The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

39.    Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

40.    The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant

difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

41. All of the violations alleged herein are readily achievable to modify the Property into compliance with the ADA, due to the fact the modifications required to cure the barriers to access identified in paragraph 37 of this Complaint, are listed within 28 C.F.R. § 36.304 as readily achievable.

42. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

43. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., have the financial resources to make the necessary modifications. According to the Property Appraiser, the Appraised value of the Property is $2,520,000.00.

44. The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

45. Upon information and good faith belief, the Property has been altered since 2010.

46. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

47. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until

Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

48. Plaintiff's requested relief serves the public interest.

49. The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC.

50. Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., pursuant to 42 U.S.C. §§ 12188 and 12205.

51. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a) That the Court find Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., in violation of the ADA and ADAAG;

(b) That the Court issue a permanent injunction enjoining Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., from continuing their discriminatory practices;

(c) That the Court issue an Order requiring Defendants, HARDIAL SINGH MANGAT, SURINDER MANGAT and BADAR, INC., to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible

to and useable by individuals with disabilities to the extent required by the ADA;

(d) That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e) That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: August 24, 2025

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com